UNITED STATES COURT OF APPEALS

FOR THE

FIFTH CIRCUIT



No. 19-10862

Lisa A. Biron,

 Plaintiff-Appellant,

v.

Jody Upton, Warden; Leticia A. Armstrong;
Emily Dixon,
 Defendants-Appellees.

Appeal from the United States District Court
for the
Northern District of Texas
USDC No. 4:19-cv-322

## Petition for Panel Rehearing

Ms. Biron seeks rehearing because the Panel-Majority erred in holding

that "defendants violated no law or Constitutional provision" (Opinion at 5)

regarding the practice of her Christian faith, and, consequently, in failing

to order the defendants to return her 144-page draft Christian manuscript.

See Orellana v. Kyle, 65 F.3d 29, 33 (5th Cir. 1995)("Neither absolute nor

qualified immunity extends to suits for injunctive or declaratory relief....").

## Facts in the Operative Complaint

 The facts and the reasonable inferences drawn therefrom in the operative

complaint are as follows:

Ms. Biron was in the process of drafting a Christian manuscript when the defendants took it from her. Ms. Biron is convicted of sex offenses, but was not in the sex offender treatment program. "It is Ms. Biron's sincerely held religious belief that she was directed by God to research, pray about, and study the Bible concerning God's view of morality involving sex and sexual conduct, and to record these findings in writing for use in her rehabilitation and to help disciple and educate others in this vital subject." (First Verified Amended Complaint.) The taking of the writing halted the writing process which Ms. Biron was completing in obedience to God as an exercise of her Christian faith.

As stated, Ms. Biron was not enrolled in sex offender treatment and had not consented to treatment by these psychologists, which, if she had, may have, arguably, allowed them permission to subjugate her religious exercise to their secular-humanistic discipline of psychology to which she is opposed, (id.), although she makes no such concession; especially since the writing was Christian-based and morally sound (by no means sexually explicit) and did not threaten the safety and security of the institution or endanger the public. (id.)

Ms. Biron was forced to disobey God (i.e., stop writing), or risk disciplinary action at the whim of the defendant psychologists. The defendants still have the draft and are, therefore, still violating her rights by causing her to be unable to continue and complete her God-given assignment.

When the Panel reviewed the dismissal under Fed. R. Civ. P. 12(b)(6), it should have "accept[ed] all [of these] well pleaded facts and draw[n] all reasonable inferences in favor of [Ms. Biron]." See BG Gulf Coast LNG v. Sabine-Neches Navigation Dist., 49 F.4th 420, 425 (5th Cir. 2022)

(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

In the present case, the Panel-Majority held that Ms. Biron "has not established any constitutional violation[,]" (Op. at 5), but failed to consider the violation of her statutory right to the free exercise of her religion under the Religious Freedom Restoration Act ("RFRA").[1]

<u>The Religious Freedom Restoration Act</u>

The government may not substantially burden a person's exercise of religion unless it demonstrates "that application of the burden to the person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." <u>Holt v. Hobbs</u>, 574 U.S. 352, 357 (2015); 42 U.S.C. § 2000bb-1.[2]  "'[T]he "exercise of religion" often involves not only belief and profession but the performance of . . . physical acts.'" <u>Id.</u> (quoting <u>Employment Div. v. Smith</u>, 494 U.S. 872, 877 (1990)). "'[A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify h[er] religious behavior and significantly violates h[er] religious beliefs.'" <u>U.S. Navy Seals 1-26 v. Biden</u>, 27 F.4th 336, ___ (5th Cir. 2022)(quoting <u>Adkins v. Kaspar</u>, 393 F.3d 559, 570 (5th Cir. 2004)). Once the plaintiff shows a substantial

---

1 Ms. Biron also disagrees that she failed to state a First Amendment constitutional claim, but will address that in her Petition for Certiorari if necessary to secure the return of her writing.

2 <u>Holt v. Hobbs</u> involved the Religious Land Use and Institutionalized Persons Act ("RLUIPA") not RFRA. RLUIPA was enacted by Congress after the Supreme Court held RFRA unconstitutional as applied to state actors. RFRA is applicable to the present case which involves federal defendants. The case law for RULIPA applies equally to RFRA claims, at least as applicable to the issues in this case.

burden on her exercise of religion, "'RFRA requires the Government to dem-
onstrate that the compelling interest test is satisfied through application
of the challenged law "to the person"-the particular claimant whose sincere
exercise of religion is being substantially burdened.'" U.S. Navy Seals 1-26,
27 F.4th at ___(quoting Gonzales v. O Centro Espirita, 546 U.S. 418, 430-31
(2006)). "This is a 'high bar.'" Id.(quoting Little Sisters of the Poor
Saints Peter & Paul Home v. Pennsylvania, 140 S. Ct. 2367, 2392 (2020)(Alito,
J.,concurring)).

    "RFRA was designed to provide very broad protection for religious lib-
erty. By enacting RFRA, Congress went far beyond what this Court has held
is constitutionally required." Burwell v. Hobby Lobby Stores, Inc., 573
U.S. 682, 706 (2014). "[I]n an obvious effort to effect a complete separ-
ation from First Amendment case law, Congress deleted the reference to the
First Amendment as originally used to define 'exercise of religion' in RFRA."
Id. at 696; 42 U.S.C. § 20000bb-2(4)(importing RLUIPA's definition into
RFRA). RFRA "protects any exercise of religion whether or not compelled by,
or central to, a system of religious belief[.]" Ramirez v. Collier, 142
S. Ct. 1264, 1277 (2022).

    In the present case, the Panel-Majority stated, summarily, that Ms.
Biron "has made no showing that the confiscation of her manuscript poses a
'substantial[] burden' on her religious exercise," citing the RFRA statute,
before explaining in the next sentence that, "although prisoners retain
many First Amendment rights, a prison regulation violates the First Amend-
ment only if it is not 'reasonably related to legitimate penological inter-
ests." (Op. at 5.) But "reasonableness" has no place in a RFRA-strict scrut-
iny-analysis. "After all, in the substantial burden analysis, the govern-

4

ment's motivations . . . are irrelevant; we ask only whether the government's action operates to place 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Priests for Life v. United States HHS, 808 F.3d 1, 6 (D.C. Cir. 2015)(Kavanaugh, J., dissent from denial of pet. for rehrg.)(quoting Thomas v. Review Bd., 450 U.S. 707, 718 (1981).

Recently, Justice Alito explained RFRA's "substantial burden" test in his concurrence (Gorsuch, J., joining) in Little Sisters. It has two parts. "First, would non-compliance have substantial adverse practical consequences? Second, would compliance cause the objecting party to violate [her] religious beliefs, as [she] sincerely understands them?" Little Sisters, 140 S. Ct. at 2389 (citing Hobby Lobby, 573 U.S. at 720-26).

In Holt, a Muslim inmate sought to grow a 1/2 inch beard as part of the practice of his Muslim faith. The prison's policy prohibited inmates from growing facial hair or risk disciplinary action. Holt, 574 U.S. at 358-59. The Court held that petitioner "easily satisfied" his burden of proving that the prison's grooming policy "substantially burdened that exercise of religion." Id. The Holt Court noted that the lower court's conclusion that the policy did not substantially burden petitioner's religious exercise, because he had other means of practicing his faith, was flawed because it "improperly imported a strand of reasoning from cases involving prisoners' First Amendment rights. Under those cases, the availability of alternate means of practicing religion is a relevant consideration, but [RFRA] provides greater proction." Id. at 361-62. RFRA's "'substantial burden' inquirey asks whether the government has substantially

burdened religious exercise (here the growing of a 1/2 inch beard), not whether the [RFRA] claimant is able to engage in other forms of religious exercise." Id.

In West v. Radtke, 48 F.4th 836, ___ (7th Cir. 2021), the court held that a transgender-inmate's objection to cross-sex strip searches was both religious in nature and sincere, and that the prison had substantially burdened his religious exercise by requiring him to either submit to cross-sex strip searches in violation of his faith or face discipline. The burden was unjustified under the strict scrutiny standard.

Similarly, in Johnson v. Baker, 23 F.4th 1209, ___ (9th Cir. 2021), a prison regulation that prohibited prisoners' personal possession of scented oil substantially burdened Johnson's particular religious exercise of praying using oil.

In the present case, Ms. Biron has easily met her burden, especially at the pleading stage of this action, of showing that the defendants substantially burdened her religious exercise under RFRA. Her particular religious exercise is the production of the manuscript that she was directed by God to write and which the defendants forbid. Non-compliance with the defendants could incur disciplinary action and negative comments in her central file. Compliance with the defendants is to disobey God, which violates her religious beliefs. See Little Sisters, 140 S. Ct. at 2389.

Indeed, it is difficult to imagine what the Panel-Majority would consider a substantial burden on religion if the fact pattern here is not: the government stopped Ms. Biron from completing her God-ordained and directed assignment to write her Christian, Biblical manuscript that she

6

was drafting in obedience to God because the sincere practice of her Christ-
ian faith requires she act in obedience to God. The government accomplished
this by stealing her work, lying about its contents and refusing to give
it back. Clearly, these government-psychologists' acts "pressure[d] [Ms.
Biron] to significantly modify [her] religious behavior and significantly
violate[d] her religious belief." See U.S. Navy Seals 1-26, 27 F.4th at
___ (quoting Adkins, 393 F.3d at 570).

Like the prisoners in Holt, West, and Johnson, who were prohibited
from their particular religious exercises of beard-growing, same-sex search-
es, and possession of scented oil respectively, Ms. Biron was prohibited
from writing her manuscript. And because the defendants still have the
144-pages of her writing and research, she still cannot complete her God-
given assigment, and thus the defendants are still presently, continually,
and substantially burdening the exercise of her religion, which will not
cease until the manuscript is returned to her so she may complete it.[3]
And if the defendants have violated the formal litigation hold notice that
ordered them to preserve the manuscript, they should be subject to sanctions,
and Ms. Biron paid the value of her lost work.[4]

_____

3 Ms. Biron notes that if she were the defendants' attorney, and she read
Judge Elrod's dissent, she would have had that manuscript in the Certified
Mail to the plaintiff before the ink on the Opinion was dry, mooting the
case, saving this Court's time in addressing this issue on rehearing and
guarding her clients against a declaratory judgment and injunction ordered
against them.

4       [T]he proposition that when an individual is sued in regard
        to property which he holds as an officer or agent of the
        United States, his possession cannot be disturbed when that
        fact is brought to the attention of the court, has been over-
        ruled and denied in every case where it has been necessary
        to decide it[.]
United States v. Lee, 106 U.S. 196, 215-16 (1882).

For the foregoing reasons, the Panel should rehear this matter and remand the case.

Respectfully submitted,

1/23/23
Date

*Lisa Biron*

Lisa Biron (12775-049)
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

## Certificate of Service & Verification of Timely Filing

I certify that a copy of this Petition for Panel Rehearing was mailed to AUSA Brian Stoltz; and I hereby declare under the penalty of perjury that four (4) copies of this Petition were mailed to the Court for filing by depositing said copies in the inmate mail system, Certified Mail, postage paid on this date.

1/23/23
Date

*Lisa Biron*

Lisa Biron

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2022

Lyle W. Cayce
Clerk

No. 19-10862

LISA A. BIRON,

*Plaintiff—Appellant,*

*versus*

JODY UPTON, WARDEN; LETICIA A. ARMSTRONG; EMILY
DIXON,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-322

Before STEWART, ELROD, and GRAVES, *Circuit Judges.*

PER CURIAM:*

    Plaintiff-Appellant Lisa Biron, a federal inmate proceeding pro se, appeals the dismissal of her complaint seeking monetary damages and injunctive relief arising from prison psychologists' confiscation of a lengthy manuscript she had written. Finding no reversible error, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 19-10862

## I.

Biron was convicted by a New Hampshire federal jury of eight counts involving the sexual exploitation of her minor daughter. *Biron v. United States*, No. 16-CV-108-PB, 2017 WL 4402394, at *1 (D.N.H. Oct. 2, 2017). She was sentenced to 480 months' imprisonment.

Biron is currently housed at Waseca Federal Correctional Institution in Minnesota, but she previously received mental health and sex offender treatment at Carswell Federal Medical Center (FMC Carswell) in Fort Worth, Texas. The judgment entered in Biron's criminal case recommended that she "participate in a sex offender treatment program while incarcerated." Biron, a former attorney, filed a pro se civil complaint in Texas state court against federal officials based on actions arising out of her treatment at FMC Carswell. She sued the following FMC Carswell personnel: Jody Upton, warden; Leticia A. Armstrong, psychologist; and Emily Dixon, psychologist. Her claims against Armstrong and Dixon are based on their confiscation of a 144-page manuscript Biron was writing to record her conclusions on Christian morality of sexual conduct. In Biron's complaint filed in state court, she alleged that she "was directed by God to research, pray about, study the Bible concerning God's view of morality involving sex and sexual conduct, and to record these findings in writing for use in her rehabilitation and to help educate others." Her claim against Upton asserted that he failed to intervene to order the manuscript's return. Biron alleged violations of her rights under the First Amendment, the Religious Freedom Restoration Act (RFRA), the Fifth Amendment, and Texas law.

The defendants removed the case to federal court, and there moved to dismiss for lack of jurisdiction and failure to state a claim. In response, Biron filed an amended complaint seeking money damages for violations of

her rights under the Fifth Amendment's Due Process Clause; RFRA; the Administrative Procedures Act (APA); and the First Amendment's Free Exercise, Freedom of Expression, and Establishment Clauses. She further seeks injunctive relief ordering the return of her manuscript and cessation of her psychological treatment. Biron sues Upton in his official capacity and Armstrong and Dixon in their official and individual capacities. The defendants renewed their motion to dismiss, and full briefing on the motion followed.

The district court granted the motion in a twelve-page memorandum opinion, concluding that Biron's transfer mooted most of her claims, Biron's individual claims are barred by qualified immunity and a lack of a cause of action under *Bivens*, and that sovereign immunity bars Biron's official-capacity claims. Biron timely appealed. Construed broadly, she challenges the dismissal of her First Amendment claims under rule 12(b)(6) and of her official-capacity claims for want of jurisdiction. We have jurisdiction under 28 U.S.C. § 1291 over this appeal from a final judgment dismissing all of Biron's claims in this removed case.

II.

We review the district court's dismissal under rules 12(b)(1) and 12(b)(6) de novo. *Childers v. Iglesias*, 848 F.3d 412, 413 (5th Cir. 2017) (rule 12(b)(6)); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005) (rule 12(b)(1)). We take all well-pled factual allegations as true and view them in the light most favorable to Biron. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

III.

We first address Biron's individual-capacity claims. The district court held that the defendants are entitled to qualified immunity against Biron's RFRA claim. We have never squarely held that qualified immunity is

No. 19-10862

available as a defense for federal officials against RFRA claims,[1] and the district court undertook no analysis to determine the doctrine's applicability here. *Cf. Stramaski v. Lawley*, No. 20-20607, 2022 WL 3274132, at *6 (5th Cir. Aug. 11, 2022) ("Our starting point is a conviction that substantial analysis is necessary before deciding if qualified immunity ever applies to the [Fair Labor Standards Act]."). But Biron does not contend that qualified immunity is unavailable against her RFRA claims, and thus she has forfeited any such argument. We therefore consider whether Biron has alleged a violation of any clearly established Free Exercise right.

Biron has identified no authority holding that a prison official's mistaken designation of an inmate's personal writings as contraband violates the Constitution or any federal law. Assuming that Biron's manuscript was not sexually explicit, Biron cites no cases in which the Fifth Circuit or the Supreme Court have held that prison psychologists' removal of a sex offender's writings about "sexual conduct," erroneously found to be sexually explicit, violates the Constitution. That failure alone forecloses her arguments against the applicability of qualified immunity. *E.g., Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (noting that a "plaintiff has the burden to negate the assertion of qualified immunity").

---

[1] During the pendency of this appeal, the Supreme Court held that damages claims are permissible under RFRA against federal officials sued in their individual capacities. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020). But the Court did not squarely address whether the doctrine applies to RFRA claims against federal officials; instead, both the Government and the plaintiffs in that case "agree[d] that government officials are entitled to assert a qualified immunity defense when sued in their individual capacities for money damages under RFRA." *Id.* at 493 n.* Though we have not resolved this question, we did apply the qualified immunity analysis to a RFRA claim against state officials before RFRA was limited to apply only to federal officials. *See Ganther v. Ingle*, 75 F.3d 207, 211 (5th Cir. 1996).

Moreover, even if qualified immunity is unavailable here, Biron also has not established any constitutional violation. First, Biron has made no showing that the confiscation of her manuscript poses a "substantial[] burden" on her religious exercise. 42 U.S.C. § 2000bb–1(a), (b). And although prisoners retain many First Amendment rights, a prison regulation violates the First Amendment only if it is not "reasonably related to legitimate penological interests." *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017). Biron has not shown that even a mistaken designation of her manuscript as sexually explicit violates this tenet. Preserving order and security are compelling penological interests, *see Warner v. Wright*, 434 F. App'x 333, 336 (5th Cir. 2011), prison officials may impose reasonable restrictions on the type and amount of property that inmates are allowed to possess, *see Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir. 1980), and sexually explicit material may constitute contraband in the prison context, *see Thompson v. Patteson*, 985 F.2d 202, 205–06 (5th Cir. 1993).

Accordingly, we need not address the district court's conclusions regarding Biron's official-capacity claims. If the defendants violated no law or constitutional provision in their individual capacities, they cannot be liable in their official capacities. *Cf. Whitley v. Hanna*, 726 F.3d 631, 639 (5th Cir. 2013) ("To the extent Whitley asserts claims against Appellees in their official capacities, we find such claims also fail for lack of an underlying constitutional violation.").

The judgment below is AFFIRMED.

No. 19-10862

JENNIFER WALKER ELROD, *Circuit Judge*, concurring in part* and dissenting in part:

In my view, the majority opinion goes further than it should by holding that "the defendants violated no law or Constitutional provision." *Ante* at 5. Because I think such a conclusion is premature at this stage, I would reverse in part and remand for further proceedings.

When reviewing dismissal under rule 12(b)(6), "[w]e accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff." *BG Gulf Coast LNG v. Sabine-Neches Navigation Dist.*, 49 F.4th 420, 425 (5th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the operative complaint, Biron alleged that:

- "[D]espite Ms. Biron's refusal to submit to treatment by Emily Dixon, Defendant Dixon conducted a targeted search of Ms. Biron's locker and removed all 144 pages of this manuscript draft and notes written by Ms. Biron . . . ";

- "Defendant Armstrong advised Ms. Biron that her writing would not be returned to her and was permanently confiscated because it was 'sexually explicit'";

---

* I agree with the majority opinion that the individual-capacity damages claims were properly dismissed because the officials are entitled to qualified immunity and Ms. Biron has not identified any violation of clearly established law. *Ante* at 4. And to the extent that qualified immunity may be inapplicable to her RFRA claims, she has forfeited any such arguments by failing to brief them. *Id.* The district court also properly dismissed most of Biron's official-capacity injunction claims because she is no longer staying at the Texas facility (FBOP Carswell). Biron argues that these claims are not moot because she may still be subject to the same policy in the Minnesota facility. But even if Biron's assertion is valid, she failed to name the correct defendants because none of the current defendants are associated with the Minnesota facility. Thus, I would dismiss these claims without prejudice.

6

- "It is Ms. Biron's sincerely held religious belief that she was directed by God to research, pray about, and study the Bible concerning God's view of morality involving sex and sexual conduct, and to record these findings in writing . . . ";

- "Defendants' actions in confiscating Ms. Biron's writing as 'hard contraband' served solely as forced treatment to alter her behavior";

- Her sincerely held religious belief "is diametrically opposed to the philosophical underpinnings of the secular humanistic discipline of psychology."

If these allegations are true, Biron at least has one valid claim for relief that should not be dismissed: her request to have her writings returned. This claim is not moot because there is no indication that the writings have left the defendants' possession. Biron stated in her brief that the "defendants still have [her writing]," and the defendants never denied this allegation. Rather, the defendants argued that they "no longer have custody or authority over Biron and thus are in no position to return any items to her possession." But if the defendants still have possession of the writings, I see no reason why they cannot deliver the writings to Biron. Presumably, Biron would still be able to receive mail in her new correctional facility.

Furthermore, viewed in the light most favorable to Biron, these allegations—which we must accept as true at this stage—could raise a factual issue as to whether the confiscation of her manuscript poses a "substantial burden" on her religious exercise under RFRA. 42 U.S.C. § 2000bb-1. Consequently, I think more factual development is necessary before we can conclude that "the defendants violated no law or Constitutional provision." *Ante* at 5.

No. 19-10862

\*        \*        \*

Contrary to the district court's holding, Biron's request to have her writings returned to her is not moot because the defendants still have possession of her writings. And viewed in the light most favorable to Biron, her allegations, if true, could establish that the confiscation of her manuscript poses a "substantial burden" on her religious exercise. 42 U.S.C. § 2000bb-1. Accordingly, I would reverse in part and remand the district court's dismissal of Biron's injunctive relief claim to have her writings returned.



CERTIFIED MAIL

7022 3330 0003 0063 0786

Rico Bueno
A775-049
Oakdale Correctional Institution
PO Box 1731
Oakdale MN 71083

⟨⟩12775-049⟨⟩
Fifth Circuit Ct Appeals
Clerk of the Court
600 S Maestri Pl
NEW Orleans, LA 70130-3408
United States

Legal Mail